ANTHONY WILKINS A/K/A ARTHUR JETER AND
RAYMOND FISHER v. STATE OF MARYLAND

[No. 151, September Term, 1981.]

*Decided May 4, 1982.*

The cause was argued before MURPHY, C. J., and SMITH,
ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with
whom was *Alan H. Murrell, Public Defender,* on the brief,
for appellant.

*Philip M. Andrews, Assistant Attorney General,* with
whom was *Stephen H. Sachs, Attorney General,* on the brief,
for appellee.

MURPHY, C. J., delivered the opinion of the Court.

The issue in this case is whether a person accused of committing a direct criminal contempt of court may be sentenced to a term in excess of six months' imprisonment without having been afforded the opportunity for a jury trial.

I

Appellant was charged in the Criminal Court of Baltimore with rape and related crimes. Prior to the commencement of trial on December 8, 1980, the appellant sought an in-court identification proceeding, out of the jury's presence, to determine whether the victim could identify him. The court granted appellant's request and arranged to have approximately twelve young males seated in the courtroom. Appellant was permitted to position them as he wished, and to select his own seat. Thereafter the victim entered the courtroom. When asked whether she could identify her assailant, she walked to the place where appellant was seated and identified him. The jury was thereafter selected and the trial began.

At a bench conference, appellant told the trial judge that he wanted to be removed from the courtroom and that if he was not, he would disrupt the trial. The judge declined to remove appellant from the courtroom, advising him that if he was disruptive, he could be cited for contempt of court. Appellant ignored the judge's warning. He began talking in what the trial judge later characterized as "loud and vociferous tones" and continued to do so throughout the prosecutor's opening statement to the jury.

On the second day of the trial, appellant again announced his intention to disrupt the proceedings. He refused to take his seat at the trial table when ordered to do so by the trial judge. When the judge instructed the sheriffs and guards to seat appellant at the trial table, appellant physically resisted the sheriffs and jailguards in front of the bench. It required four to six persons to finally subdue the appellant and to seat him at the trial table.

When appellant continued his cursing and use of loud, abusive language, the trial judge called a recess for a confer-

ence in chambers. At the conference, appellant renewed his request to be removed from the courtroom, which was again denied. When trial resumed, appellant once again began to struggle with the guards. He was wrestled to the floor and was informed that he would be removed from the courtroom but could return if he agreed to behave in an appropriate manner. Appellant was then removed from the courtroom.

Following the appellant's removal, the victim gave her testimony. In appellant's absence, she was unable to make an in-court identification. She did testify, however, as to her pretrial courtroom identification of appellant on the previous day. Upon completion of her testimony, the appellant returned to the courtroom and engaged in no further disruptive behavior. At the conclusion of the trial, the court cited appellant for four acts of direct criminal contempt. It elected to try the case summarily, without a jury, and on December 10, 1980 found appellant in contempt of court. On December 11, 1980, the jury acquitted the appellant of the criminal charges.

On September 25, 1981 — over nine months after appellant's convictions for criminal contempt — the trial judge conducted a sentencing hearing. He stated that sentence had been delayed for a presentence report and because the case was one requiring extensive research prior to ultimate disposition. Appellant, who had been incarcerated since the contempt convictions, argued that since he had not been afforded the right to a jury trial, the maximum sentence permitted by law was six months. He argued that by delaying final disposition for more than nine months, the trial judge had, in effect, already exceeded that maximum sentence. The court, taking a contrary view of the law, sentenced appellant to a total of sixteen years for the four contemptuous acts, with credit for time served while awaiting disposition of the case. An appeal was thereafter noted to the Court of Special Appeals. We granted certiorari prior to decision by that court to consider the important constitutional issue presented in the case.

338

## II

Prior to 1964, the firmly entrenched common law rule was that courts could try criminal contempt cases without a jury, regardless of the severity of the sentence actually imposed. *See, e.g., Green v. United States,* 356 U.S. 165, 183-87, 78 S. Ct. 632, 2 L. Ed. 2d 672 (1958).

*United States v. Barnett,* 376 U.S. 681, 84 S. Ct. 984, 12 L. Ed. 2d 23 (1964), and *Cheff v. Schnackenberg,* 384 U.S. 373, 86 S. Ct. 1523, 16 L. Ed. 2d 629 (1966), signaled a shift from this common law tradition. In *Barnett,* the Court ruled that there was no constitutional right to a jury trial in all criminal contempt cases, but left undecided the issue of whether a severe punishment might trigger the right to a jury trial. In *Cheff,* the Court held that a six-month term of punishment for contempt of a federal court permitted treating the case as a prosecution for "a petty offense," which under previous decisions did not require a jury trial. However, the Court further held that

> "sentences exceeding six months for criminal contempt may not be imposed by federal courts absent a jury trial or waiver thereof." 384 U.S. at 380.

In *Bloom v. Illinois,* 391 U.S. 194, 88 S. Ct. 1477, 20 L. Ed. 2d 522 (1968), the Court said that "there is no substantial difference between serious contempts and other serious crimes," *id.* at 202, and that "[t]he Constitution guarantees the right to jury trial in state court prosecutions for contempt just as it does for other crimes." *Id.* at 199-200.

In *Taylor v. Hayes,* 418 U.S. 488, 94 S. Ct. 2697, 41 L. Ed. 2d 897 (1974), the Court delineated the extent of the right to a jury trial in criminal contempt cases:

> "[O]ur cases hold that petty contempt like other petty criminal offenses may be tried without a jury and that contempt of court is a petty offense when the penalty actually imposed does not exceed six months or a longer penalty has not been expressly

authorized by statute. [citations omitted]" *Id.* at 495.

We recognized these principles in *State v. Roll and Scholl,* 267 Md. 714, 298 A.2d 867 (1973).

As already indicated, the trial judge did not afford the appellant an opportunity for a jury trial on the contempt charges. At the disposition hearing, he stated:

"[T]he issue in this case is whether an obstreperous defendant can lose his right to a jury trial as guaranteed under *Bloom* when he purposely subverts his current trial by acting in a contumacious manner clearly contrived to avoid a damaging eyewitness identification before the jury."

The trial judge did not believe that *Bloom* was controlling in cases like appellant's because it was

"inconsistent with the idea that courts can maintain their dignity and respect by utilizing their summary contempt power. A clever defendant who is knowledgeable about the criminal justice system may trade in a potential lengthy sentence for a lesser sentence if his contemptuous acts result in the defendant being acquitted. The *Bloom* right to a jury trial rule encourages a defendant to pursue such a path because the rule takes away the judge's sentence discretion and his ability to try the case on its merits, if the sentence imposed exceeds six months."

We note that the Supreme Court addressed these concerns in *Bloom:*

"We place little credence in the notion that the independence of the judiciary hangs on the power to try contempts summarily and are not persuaded that the additional time and expense possibly involved in submitting serious contempts to juries will seriously handicap the effective functioning of the courts. We do not deny that serious punishment

must sometimes be imposed for contempt, but we reject the contention that such punishment must be imposed without the right to jury trial. The goals of dispatch, economy, and efficiency are important, but they are amply served by preserving the power to commit for civil contempt and by recognizing that many contempts are not serious crimes but petty offenses not within the jury trial provisions of the Constitution. When a serious contempt is at issue, considerations of efficiency must give way to the more fundamental interest of ensuring the even-handed exercise of judicial power. In isolated instances recalcitrant or irrational juries may acquit rather than apply the law to the case before them. Our system has wrestled with this problem for hundreds of years, however, and important safeguards have been devised to minimize miscarriages of justice through the malfunctioning of the jury system. Perhaps to some extent we sacrifice efficiency, expedition, and economy, but the choice in favor of jury trial has been made, and retained, in the Constitution. We see no sound reason in logic or policy not to apply it in the area of criminal contempt." 391 U.S. at 208-09.

From this, we think it is clear that even the spectre of a defendant manipulating the criminal justice system does not justify abridgement of the right to a jury trial in cases of serious criminal contempt. Indeed, in this case, the trial judge could have easily frustrated appellant's goal simply by binding and gagging him and maintaining his presence in the courtroom, at least pending an in-court identification by the victim.

Although conceding that appellant was entitled to a jury trial in this case, the State argues that we should vacate the judgments and remand for a jury trial. We disagree. Appellant does not argue that his acts were not contemptuous, nor does he take issue with the procedure involved in his non-jury contempt hearing. He argues instead that when the

trial judge elected to try him without a jury, with no objection to this election by the State's Attorney, and no evidence in the record of any waiver by him of his right to a jury trial, a sentence could not constitutionally be imposed which exceeded six months. Since he has already been incarcerated for more than six months, appellant asks that we vacate the remainder of his sentence and order his release from confinement. We think the cases mandate that result. Accordingly, we shall require that that part of the sentence in excess of the constitutionally permissible limit shall be vacated.

> *Judgments affirmed except as to the sentence, as to which the case is remanded to the Criminal Court of Baltimore with directions to that Court to vacate that part of the sentence which exceeds six months' imprisonment.*
> *Costs to be paid by the Mayor and City Council of Baltimore.*
> *Mandate to issue forthwith.*