750 A.2d 35

**Raymond L. ASHFORD, Jr.**

**v.**

**STATE of Maryland.**

**No. 72, Sept. Term, 1998.**

Court of Appeals of Maryland.

April 19, 2000.

554

Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for appellant.

Devy Patterson Russell, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW *, RAKER, WILNER and CATHELL, JJ.

BELL, Chief Judge.

Following a bench trial, the appellant, Raymond Ashford, was convicted in the Circuit Court for Cecil County of constructive criminal contempt of court for failure to pay court-ordered child support and sentenced, *inter alia*, to 179 days imprisonment. He noted an appeal to the Court of Special

---

* Chasanow, J. now retired, participated in the hearing and conference of this case while an active member of this Court, but did not participate in the decision and adoption of this opinion.

Appeals, but prior to decision by that court, this Court, on its own motion, granted certiorari to address three issues: whether the appellant was entitled to a trial by jury in Circuit Court for the charge of constructive criminal contempt ·and, if so, whether the failure of the record in this case to show a knowing and voluntary waiver of that right requires reversal; whether the evidence presented was sufficient to prove criminal contempt; and whether the trial court properly tried the charge of constructive criminal contempt on an "Order Converting Charge of Civil Constructive Contempt of Court to a Charge of Criminal Constructive Contempt of Court" in lieu of a charging document filed pursuant to Maryland Rule 15–205.

We shall hold that the appellant was entitled to a jury trial and that the evidence was not sufficient to sustain the appellant's conviction. Accordingly, we shall reverse the judgment of the Circuit Court.[1]

## I.

The facts in this case are undisputed. Because of his alleged failure to make child support payments, the appellant was charged with constructive criminal contempt of court by

---

1. We need not, and therefore will not, address the propriety of the Circuit Court trying the appellant on an "Order Converting Charge of Civil Constructive Contempt of Court to a Charge of Criminal Constructive contempt of Court." That issue was before the Court, albeit in a somewhat different posture, *i.e.*, "a mid-hearing 'conversion' from civil to criminal contempt," in *Dorsey v. State,* 356 Md. 324, 348–51, 739 A.2d 41, 54–56 (1999). What we said in that case as to this issue is instructive and, indeed, dispositive:

   "[A]lthough Rule 15–207(a) authorizes the consolidation for hearing of a constructive criminal contempt case and a constructive civil contempt case, nothing in the rules authorizes a combined single charging document. Rules 15–205 and 4–202(a) specify the nature and contents of a charging document initiating a constructive criminal contempt prosecution. Rule 15–206 sets forth the entirely different requirements concerning the nature and contents of a petition initiating a constructive civil contempt proceeding. The rules contemplate different types of petitions for constructive criminal contempt prosecutions and constructive civil contempt proceedings. A combined single petition is simply not permitted."
   *Id.* at 350, 739 A.2d at 55.

"Order Converting Charge of Civil Constructive Contempt of Court to a Charge of Criminal Constructive Contempt of Court." He appeared in the Circuit Court for Cecil County on October 6, 1997 for arraignment. At that hearing, purportedly in order to avoid the necessity of a jury trial, the State recommended, and the court agreed, to limit the maximum sentence the appellant would receive to 179 days. The appellant, appearing without counsel, did not object.[2] On the trial date, however, the appellant, now appearing with counsel, requested a jury trial. The trial court denied the request, explaining that it had already agreed to limit the sentence to 179 days.[3]

At trial, a representative from the Child Support Enforcement Agency testified that the appellant was under a court order to pay child support of $50 per week plus $12.50 per week on the accrued arrearage, payable biweekly, but had not complied with that order. She testified that his payments had

---

2. The following colloquy occurred at the hearing:

[The State]: I have the case of Raymond Ashford. It's [sic] criminal Number 97864C. He was supposed to come in here the 21 st for court or jury selection. The state is going to ask that the court bind itself to a sentence of 179 days maximum so we can get a court trial rather than a jury trial.

THE COURT: Okay. Do you have any objection to this being—in other words, the maximum sentence would be you couldn't get more than 179 days in jail. Do you have any objection to that?

[The Appellant]: No, sir.

THE COURT: Then I will grant the motion.

3. The colloquy on this point was as follows:

THE COURT: Is that the contempt for failure to pay support?

[The State]: Criminal I believe.

[Defense Counsel]: Mr. Ashford.

THE COURT: Judge Thompson limited himself to 179 days in that case.

[Defense Counsel]: That's my understanding.

[The State]: Yes, sir, Your Honor.

[Defense Counsel]: We would still yet ask for a jury trial.

THE COURT: You can't.

[Defense Counsel]: Well, I would argue that, I believe that, under the law in Maryland, any way, we would be entitled to a jury trial for any sentence in excess of ninety days.

THE COURT: Well. I'll—let's go on with the trial.

been "sporadic at best." Further, the representative advised the court that the last payment the agency received from the appellant was on July 21, 1997, in the amount of $250 and that the arrearage as of the date of the trial totaled $19,240.25. She added that, since making his last payment, the appellant had failed to contact her or her agency concerning any mental or physical disabilities that would have prevented him from being able to make payments. At the conclusion of the trial, the trial judge found appellant guilty of constructive criminal contempt of court and sentenced him to 179 days in prison. This appeal followed.

## II.

■ The appellant concedes that, under federal law, a defendant charged with criminal contempt has a right to a trial by jury only when the sentence could be incarceration for 180 days or more. *See Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).[4] He argues, however, that, notwithstanding federal law, Maryland law affords greater jury trial rights to defendants facing criminal charges in Circuit Court. Citing *Thompson v. State*, 278 Md. 41, 359 A.2d 203 (1976), the appellant contends that this Court has recognized a common law right to jury trial in Circuit Court without reference to *any* term of imprisonment. *See Id.* at 52–53, 359 A.2d at 209–10.[5] As the appellant sees it, because

---

**4.** In *Bloom v. Illinois*, 391 U.S. 194, 198, 88 S.Ct. 1477, 1480, 20 L.Ed.2d 522, 526 (1968), the United States Supreme Court held that the right to a jury trial applies only to cases of "serious" criminal contempt. To determine the seriousness of the contempt, the Supreme Court applied an objective test which first looked to the maximum penalty authorized by the Legislature, then, if the legislature had failed to set a maximum penalty, to the sentence actually imposed. *Id.* at 211, 88 S.Ct. at 1487, 20 L Ed.2d at 534. Later, the Supreme Court fixed the dividing line between "petty" and "serious" offenses as a prison sentence of more than six months or 180 days. *See Codispoti v. Pennsylvania*, 418 U.S. 506, 512, 94 S.Ct. 2687, 2691, 41 L.Ed.2d 912, 919 (1974); *Baldwin v. New York*, 399 U.S. 66, 68, 90 S.Ct. 1886, 1888, 26 L.Ed.2d 437, 440 (1970).

**5.** In *Thompson v. State*, 278 Md. 41, 49, 359 A.2d 203, 207 (1976), this Court held, *inter alia*, that "where a defendant is charged with a crime

no legislative enactments limit the right to a jury trial for a charge of constructive criminal contempt, and the charge of constructive criminal contempt is not subject to summary proceedings, he was entitled to, and improperly denied, a trial by jury. Accordingly, the appellant argues that the failure of the record in this case to show a knowing and voluntary waiver of that right requires reversal.

Alternatively, while noting that criminal contempt is the only offense tried in Circuit Court for which it is contended that a defendant's right to a jury trial depends on the length of the sentence he or she faces, the appellant cites *Kawamura v. State*, 299 Md. 276, 295–96, 473 A.2d 438, 448–49 (1984) for the proposition that, as a matter of state constitutional law, no legal basis exists for treating criminal contempt differently from other serious criminal offenses. Involved in the *Kawamura* case was a challenge to the constitutionality of § 4–302(d)(2)(ii) of the Courts and Judicial Proceedings Article (1974, 1984 Repl.Vol.), a Maryland statute permitting the

---

in a court of common law jurisdiction [*i.e.*, a circuit court] and where no legislative enactments restricts his right to a jury trial, ... [the defendant] is entitled to the common law mode of trial, *i.e.*, trial by jury." The Court explained:

"No Maryland statute denies a defendant, charged in the Criminal Court with a so-called 'petty' crime, the right to a jury trial. While it may be constitutional to do so, *Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *Dist. of Columbia v. Clawans*, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937); *Callan v. Wilson*, *supra*, 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223; *Baum v. Warden of Jail*, 110 Md. 579, 584, 73 A. 294 (1909); *State v. Glenn*, *supra*, 54 Md. 572[ (1880)], the statutory provisions do not reflect such an intent on the Legislature's part.

"The circuit courts, including the Criminal Court of Baltimore, are the 'highest common-law' courts of record within the State, exercising 'full common-law' powers and jurisdiction in criminal cases. Code (1974), s 1–501 of the Courts and Judicial Proceedings Article. (Emphasis supplied.) As discussed above, '(t)he regular common-law method of trial of issues of fact in criminal cases, except cases of summary proceeding, is by jury.' Hochheimer, *Law of Crimes and Criminal Procedure*, p. 48 (1897). Absent legislative action taking the right away (in those instances where it would be constitutional to do so), the common law right to a jury trial remains applicable."
278 Md. at 52–53, 359 A.2d at 209–210.

State and the court, acting together, to deny to a criminal defendant his or her right to be tried by a jury for a crime with a maximum authorized penalty of imprisonment for more than 90 days.[6] Under that section, if the prosecutor recommended that the judge not impose more than ninety days imprisonment and if the judge agreed, the defendant was not

---

6. Pursuant to Md.Code (1974, 1984 Repl.Vol.) § 4–302(d) of the Courts & Judicial Proceedings Article, a defendant charged in the District Court, irrespective of the crime, had the right to pray a jury trial if he/she was facing a penalty of more than 90 days imprisonment. Presently codified at Md.Code (1998 Repl. Vol) § 4–302(e) of the Courts & Judicial Proceedings Article, the statute now provides, in pertinent part:

"(e) *Jury trial.*—(1) The District Court is deprived of jurisdiction if a defendant is entitled to and demands a jury trial at any time prior to trial in the District Court.

(2)(i) Except as provided in subparagraph (ii) of this paragraph, unless the penalty for the offense with which the defendant is charged permits imprisonment for a period in excess of 90 days, a defendant is not entitled to a jury trial in a criminal case."

Where several offenses arising from the same circumstances are within the District Court's jurisdiction and one of them entitles the defendant to a jury trial, the defendant's jury trial demand transfers to the Circuit Court original, exclusive jurisdiction over each of the offenses. *See Thompson*, 278 Md. at 47, 359 A.2d at 206. *See also* Md.Code (1974, 1998 Repl.Vol.) § 4–302(f)(1) of the Courts & Judicial Proceedings Article, which provides:

"Except as provided in Title 4, Subtitle 5 of the Family Law Article, the District Court does not have jurisdiction of an offense otherwise within the District Court's jurisdiction if the person is charged:

"(i) With another offense arising out of the same circumstances but not within the District Court's jurisdiction.

"(ii) In the circuit court with an offense arising out of the same circumstances and within the concurrent jurisdictions of the District Court and the circuit court described under subsection (d) of this section."

Therefore, a defendant convicted in the District Court of an offense that carries a penalty of imprisonment or for which there is a constitutional right to a jury trial is entitled to a trial *de novo* by jury in the Circuit Court, whether or not he or she could have elected a jury trial in District Court. *See* Md.Code (1974, 1995 Repl.Vol.) § 12–401(g) of the Courts & Judicial Proceedings Article ("in a criminal appeal that is tried *de novo*, there is no right to a jury trial unless the offense charged is subject to a penalty of imprisonment or unless there is a constitutional right to a jury trial for that offense."). *See also, Thompson*, 278 Md. at 49, 359 A.2d at 207; *Hardy v. State*, 279 Md. 489, 493, 369 A.2d 1043, 1046–47 (1977); *Kleberg v. State*, 318 Md. 411, 415, 568 A.2d 1123, 1124 (1990).

entitled to a jury trial and the case remained in the District Court to be tried without a jury. We held that the statute denied the defendant, who was charged with theft under $300, his right to jury trial in violation of the Maryland Constitution, *id.* at 286, 473 A.2d at 443–44, noting, in the process, "it is the nature of the offense, and not the disposition in a particular case, which is relevant to the state constitutional jury trial right in criminal cases." *Id.* at 296, 473 A.2d at 449.

The State of Maryland, relying on Supreme Court precedent, *see Bloom,* 391 U.S. at 211, 88 S.Ct. at 1487, 20 L.Ed.2d at 534, contends that the appellant was not entitled to a jury trial right because the maximum potential sentence was less than 180 days. While conceding that a defendant who is charged with contempt in District Court and prays a jury trial is entitled to a jury trial in Circuit Court if the maximum sentence is more than 90 days, *see* § 4–302(e) of Md. Cts. & Jud. Proc. Art., it argues that, because this case originated in Circuit Court, the Maryland legislature has not set a maximum sentence for the crime of criminal contempt, and the trial judge imposed "only a 179 day sentence," no jury trial is required. Moreover, citing *Mitchell v. State,* 320 Md. 756, 580 A.2d 196 (1990), *Whitaker v. Prince George's County,* 307 Md. 368, 514 A.2d.4, (1986), and *Wilkins v. State,* 293 Md. 335, 444 A.2d 445 (1982), the State points out that Maryland Courts have followed the Supreme Court's guidance in *Bloom,* establishing, as they view it, a "bright-line rule" that criminal contempt does not constitute a crime giving rise to a jury trial right unless punished by a sentence in excess of 180 days.

Finding merit in the appellant's principal argument, we need not and, therefore, do not decide whether an alleged criminal contemnor is entitled to a trial by jury as a matter of state constitutional law where the maximum potential sentence is less than 180 days. *See State v. Lancaster,* 332 Md. 385, 404 n. 13, 631 A.2d 453, 463 n. 13 (1993) ("this Court has regularly adhered to the principle that we will not reach a constitutional issue when a case can properly be disposed of on a non-constitutional ground"). *See also, Wilson v. Yates,* 137

Md. 54, 61, 111 A. 161, 164 (1920); *Dorsey v. State*, 356 Md. 324, 342, 739 A.2d 41, 51 (1999).

**B.**

In *Ex parte Bowles*, 164 Md. 318, 165 A. 169, (1933), this Court stated:

> "Criminal contempts of court embrace all acts committed against the majesty of the law or the dignity of the court, and the primary and controlling object sought to be obtained by punishment of such offenders is the vindication of public authority, of which the court is the embodiment, represented at any given time by the presiding judge."

*Id.* at 330, 165 A. at 174. (citing *Coons v. State*, 191 Ind. 580, 134 N.E. 194, 198, 20 A.L.R. 900 (1922)). Criminal contempt also may be utilized when the public authority is being used to enforce a court order forbidding or requiring acts for the benefit of a party. *See generally Kelly v. Montebello Park Co.*, 141 Md. 194, 118 A. 600, (1922). What is sought to be guarded against is an inability to comply caused by a deliberate effort or a wilful act of commission or omission and committed with the knowledge that it would frustrate the order of the court. *State v.Roll & Scholl*, 267 Md. 714, 730, 298 A.2d 867, 877 (1973). Commenting, in that case, on the necessity of this "weapon," this Court stated:

> Being manned by mortals ... our judicial system is not perfect; but the efforts to improve should not be impeded by abusive, contemptuous behavior designed to bully, insult, ignore, frustrate and paralyze the judicial process. Such deeds are at war with our concept of justice under the law and must be eliminated.

> One weapon in the court's arsenal useful in defending its dignity is the power to punish for contempt. But the magnitude of its force demands care and discretion in its use so as to avoid arbitrary, capricious or oppressive application of this power. The contempt power has stood as a sentry at the citadel of justice for a very long time and it is

probably because of this antiquity that its modern day application is sometimes misunderstood and often confused. *Id.* at 717–18, 298 A.2d at 870.

■ Criminal contempts may be direct or constructive. A "direct" criminal contempt has been defined as conduct which occurs in the presence of the court or so near the court that it interferes with the proper function and authority of the court. *See, e.g., Mitchell, supra,* 320 Md. 756, 580 A.2d 196 (defendant charged with direct criminal contempt for lifting his middle finger in a sign of disgust at the judge); *Wilkins, supra,* 293 Md. 335, 444 A.2d 445 (defendant charged with direct criminal contempt for disruptive conduct during court proceedings). *See also* Maryland Rule 15–202(a).[7] An "indirect" or "constructive" criminal contempt is any contempt other than a direct contempt. *See* Maryland Rule 15–202(a). *See also In re Lee,* 170 Md. 43, 47, 183 A. 560, 562, *cert. denied* 298 U.S. 680, 56 S.Ct 947, 80 L.Ed 1400 (1936) ("Indirect or constructive contempts are those which do not occur in the presence of the court, or near it, ... but at some other place out of the presence of the court and beyond a place where the contempt would directly interfere with the proper functioning of the court."); *Dorsey v. State,* 356 Md. 324, 346, 739 A.2d 41, 53 (1999). Whether direct or constructive, only that conduct that is willful or intentional may constitute a criminal contempt. *See Lynch v. Lynch,* 342 Md. 509, 522, 677 A.2d 584, 590 (1996).

■ The primary purpose of punishment for criminal contempt, whether direct or constructive, is vindication of public authority, embodied in the court and represented by the judge, *Ex parte Bowles,* 164 Md. at 330, 165 A. at 174, by punishing the contemnor for past misconduct, *Lynch,* 342 Md. at 520, 677 A.2d at 589–90, not to compel future compliance or to remedy the harm. The manner in which these forms of

---

7. Maryland Rule 15–202(b) provides:

"(b) Direct Contempt. 'Direct contempt' means a contempt committed in the presence of the judge presiding in court or so near to the judge as to interrupt the court's proceedings."

contempt are punished is distinguishable, however. A direct contempt, such as failure to appear, *see Kandel v. State*, 252 Md. 668, 250 A.2d 853 (1969); *Murphy v. State*, 46 Md.App. 138, 416 A.2d 748 (1980), or disruptive conduct in the courtroom, *see Mitchell v. State*, 320 Md. 756, 580 A.2d 196 (1990); *Wilkins v. State*, 293 Md. 335, 444 A.2d 445 (1982), may be summarily punished after such hearing as the presiding judge may deem just and necessary. *See* Md. Rule 15–203(a) ("Direct civil and criminal contempt.").[8] This Court has explained the historical and practical context in which this power is derived:

> " '[I]t is a settled doctrine in the jurisprudence both of England and of this country, never supposed to be in conflict with the liberty of the citizen, that for direct contempts committed in the face of the court, at least one of superior jurisdiction, the offender may, in its discretion, be instantly apprehended and immediately imprisoned, without trial or issue, and without other proof than its actual knowledge of what occurred; and that, according to an unbroken chain of authorities, reaching back to the earliest times, such power, although arbitrary in its nature and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions.' "

*Mitchell*, 320 Md. at 761–62, 580 A.2d at 199 (quoting *Ex parte Terry*, 128 U.S. 289, 313, 9 S.Ct. 77, 83, 32 L.Ed. 405 (1888)).

---

**8.** Maryland Rule 15–203, as pertinent, provides:

"(a) Summary Imposition of Sanctions. The court against which a direct civil or criminal contempt has been committed may impose sanctions on the person who committed it summarily if (1) the presiding judge has personally seen, heard, or otherwise directly perceived the conduct constituting the contempt and has personal knowledge of the identity of the person committing it, and (2) the contempt has interrupted the order of the court and interfered with the dignified conduct of the court's business. The court shall afford the alleged contemnor an opportunity, consistent with the circumstances then existing, to present exculpatory or mitigating information. If the court summarily finds and announces on the record that direct contempt has been committed, the court may defer imposition of sanctions until the conclusion of the proceeding during which the contempt was committed."

Thus, a defendant charged with and immediately tried for direct criminal contempt ordinarily is not entitled to a jury trial. *Mitchell, supra.*

Constructive criminal contempt, on the other hand, though itself reprehensible and equally punishable, requires a different and less summary process. *See* Md. Rule 15–205 ("Constructive criminal contempt; commencement; prosecution.").[9]

---

**9.** Maryland Rule 15–205 provides:

"(a) Separate Action. A proceeding for constructive criminal contempt shall be docketed as a separate criminal action. It shall not be included in any action in which the alleged contempt occurred.
"(b) Who May Institute.
"(1) The court may initiate a proceeding for constructive criminal contempt by filing an order directing the issuance of a summons or warrant pursuant to Rule 4–212.
"(2) The State's Attorney may initiate a proceeding for constructive criminal contempt committed against a trial court sitting within the county in which the State's Attorney holds office by filing a petition with that court.
"(3) The Attorney General may initiate a proceeding for constructive criminal contempt committed (A) against the Court of Appeals or the Court of Special Appeals, or (B) against a trial court when the Attorney General is exercising the authority vested in the Attorney General by Maryland Constitution, Art. V, § 3, by filing a petition with the court against which the contempt was allegedly committed.
"(4) The State Prosecutor may initiate a proceeding for constructive criminal contempt committed against a court when the State Prosecutor is exercising the authority vested in the State Prosecutor by Code, Article 10, § 33B, by filing a petition with the court against which the contempt was allegedly committed.
"(5) The court or any person with actual knowledge of the facts constituting a constructive criminal contempt may request the State's Attorney, the Attorney General, or the State Prosecutor, as appropriate, to file a petition.
"(c) Appointment of Prosecutor. If the proceeding is commenced by a court on its own initiative, the court may appoint the State's Attorney of the county in which the court sits, the Attorney General, or the State Prosecutor to prosecute the charge.
"(d) Contents; Service. An order filed by the court pursuant to section (b)(1) of this Rule and a petition filed by the State's Attorney, the Attorney General, or the State Prosecutor shall contain the information required by Rule 4–202(a). The order or petition shall be served, along with a summons or warrant, in the manner specified in Rule 4–212 or, if the proceeding is in the Court of Appeals or Court of Special Appeals, in the manner directed by that court.

This is because the justification for instant apprehension or immediate imprisonment is not present where the acts constituting the offense have occurred out of the presence of the court. As this Court explained in *Roll & Scholl:*

> "When ... the judge does not have personal knowledge of the facts and must learn of them totally from others, direct contempt proceedings are not authorized. The reason such proceedings are not permitted is that there is no need for summarily disposing of an alleged contempt when the behavior of the accused is not personally known to the judge or does not occur so near to the court as to interrupt proceedings then being conducted by the judge."

267 Md. at 734, 298 A.2d at 879.

With regard to a defendant's right to a jury trial for the charge of constructive criminal contempt, our holding in *Dorsey* is instructive. In *Dorsey*, this Court granted certiorari to consider whether, under Maryland law, a defendant in a circuit court constructive criminal contempt case has a right to a jury trial regardless of the sentence ultimately imposed by the court. *Id.* at 329, 739 A.2d at 44. There, identical to the present case, the defendants were charged with constructive criminal contempt for failing to pay child support payments. While refusing to grant their requests for a jury trial, the trial court agreed to limit their sentences to a maximum of 179 days imprisonment. Both defendants were convicted and the Court of Special Appeals affirmed their convictions. This court reversed, holding that, under Ch. 298 of the Acts of 1980, which added new Art. 27, § 593A[10] and § 12–401(e), now § 12–401(g) of the Courts and Judicial Proceedings Article

---

"(e) Waiver of Counsel. The provisions of Rule 4–215 apply to constructive criminal contempt proceedings.

"(f) Jury Trial. The provisions of Rule 4–246 apply to constructive criminal contempt proceedings."

**10.** That section provides:

"In a criminal case tried in a court of general jurisdiction, there is no right to a jury trial unless the offense charged is subject to a penalty of imprisonment or unless there is a constitutional right to a jury trial for that offense."

(1957, 1998 Repl.Vol.),[11] in any circuit court criminal case, whether under the court's original jurisdiction or under the court's *de novo* appellate jurisdiction, a defendant is entitled to a jury trial if the offense charged is subject to imprisonment. *Id.* at 348, 739 A.2d at 54. We expressly rejected the State's contention that the defendants were not entitled to a jury trial for a charge of constructive criminal contempt where the maximum potential sentence is less than 180 days:

> "Although Maryland Rule 15–203 has the effect of creating an exception to Ch. 298 for direct criminal contempts summarily punished by the trial judge, there is no rule or statute creating an exception for other types of criminal contempt proceedings.... [T]he need for immediate vindication of the dignity of the court justifies the immediate summary punishment by a trial judge of direct criminal ·contempt, such need furnishes no ground for a court-created exception, in a constructive criminal contempt case...."

356 Md. at 347–48, 739 A.2d at 53–54.

Similarly, in the case *sub judice*, the appellant's failure to obey the order to pay child support occurred outside the presence of the court and, but for the presentation of evidence during preliminary hearings and trial, the trial court had no knowledge of the facts constituting the offense. Thus, as the record in this case fails to show a knowing and voluntary waiver of a jury trial, we hold that the appellant was denied his statutory right to a jury trial.[12]

---

**11.** That section provides:

"Right to jury trial.—In a criminal appeal that is tried *de novo*, there is no right to a jury trial *unless the offense charged is subject to a penalty of imprisonment* or unless there is a constitutional right to a jury trial for that offense." (Emphasis added)

**12.** We decline the State's invitation to adopt the reasoning of the Court of Special Appeals in *Barksdale v. State*, 122 Md.App. 392, 712 A.2d 562 (1998). There, the intermediate appellate court held that the defendant, who had been charged with and tried in the Circuit Court without a jury, for failing to comply with a child support order, and sentenced to 180 days, was *not* entitled to a jury trial. *Id.* at 394, 712 A.2d at 563.

The State's reliance on *Mitchell, Whitaker,* and *Wilkins* is misplaced. *Mitchell* was a direct criminal contempt case and, further, the issue of whether the defendant was entitled to a trial by jury was not properly before the court. In *Mitchell,* the defendant was convicted of felony theft and sentenced to fifteen years in prison. 320 Md. at 759, 580 A.2d at 198. As the defendant was leaving the court room, he turned to the trial judge, raised his arms in handcuffs, and lifted his middle finger in a derogatory gesture. The trial judge responded by summarily holding the defendant in direct contempt of court and sentencing him to an additional five years imprisonment, later reduced to five months and 29 days. 320 Md. at 760, 580 A.2d at 198. In his appeal to the Court of Special Appeals, the defendant argued that his right to due process was violated and questioned the propriety of the trial judge trying the contempt proceedings. He never raised the issue of his entitlement to a trial by jury. The Court of Special Appeals affirmed both convictions and this Court agreed that, under the circumstances, the summary proceedings did not violate due process; however, we vacated the contempt judgment and remanded the case to the Circuit Court because the trial judge did not allow the defendant an opportunity to allocute before imposing sentence. *Id.* at 769–70, 580 A.2d at 202–203.

Similarly, in *Wilkins,* another direct criminal contempt case, the defendant did not raise the issue of his entitlement to a trial by jury for a sentence less than six months. In that case, during his jury trial for rape and related crimes, the defendant engaged in disruptive conduct, cursing and using loud and abusive language in the courtroom, resulting in his removal from the courtroom. 293 Md. at 336–37, 444 A.2d at 446–47. When the jury acquitted the defendant of the criminal charges, the court cited him for contempt and tried him summarily, without a jury, finding him guilty. *Id.* at 337, 444 A.2d at 446. Nine months later at the sentencing hearing, the defendant argued that, because the court had not afforded him

Notably, that case does not address the analysis employed in *Dorsey v. State,* 356 Md. 324, 739 A.2d 41 (1999). To the extent *Barksdale* conflicts with the holding in *Dorsey* and this case, it is overruled.

a jury trial, his time of incarceration awaiting the hearing had already exceeded the maximum sentence the court could have imposed. The trial court disagreed and sentenced the defendant to an additional sixteen years, with credit for time served. *Id.* After commenting that "it is clear that even the spectre of a defendant manipulating the criminal justice system does not justify the abridgement of the right to a jury trial in cases of serious criminal contempt," *id.* at 340, 444 A.2d at 448, this Court affirmed the defendant's convictions of contempt, but vacated that part of the sentence which exceeded six months. *Id.* at 341, 444 A.2d at 448. We did not opine as to whether a defendant's right to a trial by jury would have been violated had the sentence been less than six months. *Id.*

While the issue in *Whitaker* was whether the defendant was entitled to a trial by jury, that case involved civil contempt as opposed to criminal contempt proceedings. This Court has made clear on several occasions the distinction between civil and criminal contempt:

"A civil contempt proceeding is intended to preserve and enforce the rights of private parties to a suit and to compel obedience or orders and decrees primarily made to benefit such parties. These proceedings are generally remedial in nature and are intended to coerce future compliance. Thus, a penalty in a civil contempt must provide for purging. On the other hand, the penalty imposed in a criminal contempt is punishment for past misconduct which may not necessarily be capable of remedy. Therefore, such a penalty does not require a purging provision but may be purely punitive. In this State, to these factors must be added the degree of proof required to establish a contempt-a civil contempt need be proved only by a preponderance of the evidence, while a criminal contempt must be shown beyond a reasonable doubt."

*State v. Roll,* 267 Md. at 728, 298 A.2d at 876 (citations omitted). *See also Ott v. Frederick County Dept. of Social Services,* 345 Md. 682, 694 A.2d 101, (1997); *Lynch v. Lynch,* 342 Md. 509, 520 677 A.2d 584, 589–90 (1996); *In re Lee,* 170 Md. at 47, 183 A. at 562.

In the case at bar, the State converted the charging document from a civil contempt proceeding to a criminal contempt proceeding. Accordingly, the appellant was entitled to all common law, statutory, and constitutional safeguards for the criminally accused. The trial court erred by denying the appellant a jury trial.

## III.

Next, the appellant argues that the evidence was insufficient to convict him of constructive criminal contempt. Specifically, the appellant contends that the State was required to prove the existence of a valid order for the payment of child support, the appellant's knowledge of that order and his willful failure to comply with the order. The appellant argues that the State adduced testimony of the existence of an order, but failed to put the order into evidence. Therefore, he maintains, the court had no proof of the date of the order, the terms of the order, nor that he was a party to the case in which the court passed the order or that he had notice of the order and its terms. The appellant also contends that the State failed to prove beyond a reasonable doubt that the failure to make child support payments was willful.

On appeal from a judgment of criminal contempt, we do not weigh the evidence, we merely assess its sufficiency. *See Kandel v. State,* 252 Md. 668, 672, 250 A.2d 853, 855 (1969). In doing so, we review the evidence in the light most favorable to the prosecution, and then determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Albrecht,* 336 Md. 475, 479, 649 A.2d 336, 337–38 (1994)(citing *Jackson v. Virginia,* 443 U.S. 307, 318–319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Dawson v. State,* 329 Md. 275, 281, 619 A.2d 111, 114 (1993)). In *Albrecht,* we explained:

"[W]hen an appellate court is called upon to determine whether sufficient evidence exists to sustain a criminal conviction, it is not the function or duty of the appellate court to undertake a review of the record that would

amount to, in essence, a retrial of the case. Rather, we review the evidence in the light most favorable to the State, *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Branch v. State*, 305 Md. 177, 182–83, 502 A.2d 496, 498 (1986), giving due regard to the trial court's finding of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses. *See, e.g., State v. Raines*, 326 Md. 582, 589, 606 A.2d 265, 268 (1992); Maryland Rule 8–131(c).[ ] Fundamentally, our concern is not with whether the trial court's verdict is in accord with what appears to us to be the weight of the evidence, *see Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573; *Allison v. State*, 203 Md. 1, 5, 98 A.2d 273, 275 (1953), but rather is only with whether the verdicts were supported with sufficient evidence—that is, evidence that either showed directly, or circumstantially, or supported a rational inference of facts which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt."

336 Md. at 478–79, 649 A.2d at 337 (footnote omitted).

■ When criminal contempt is charged, as distinguished from civil contempt, the State has the burden of proving both *actus reus* and *mens rea*. *See, Roll & Scholl, supra*, 267 Md. at 730, 298 A.2d at 877. *See also Giant of Maryland v. State's Attorney for Prince George's County*, 274 Md. 158, 176, 334 A.2d 107, 117–18 (1975). In *Roll & Scholl*, we explained:

"Situations may arise where at a hearing held pursuant to an order to show cause in what properly began as a civil contempt, facts are presented which indicate that the alleged contemnor cannot comply with the order of the court that directed him to perform an act for the benefit and advantage of another party to the suit. If this inability to comply was caused by a deliberate effort or a wilful act of commission or omission by the alleged contemnor committed with the knowledge that it would frustrate the order of the court, the civil contempt proceeding should be terminat-

ed and new proceedings may be instituted which can result in a finding of criminal contempt."

267 Md. at 730, 298 A.2d at 877. In *Lynch v. Lynch*, 342 Md. 509, 677 A.2d 584, (1996), this Court explained the importance of the *mens rea* requirement in the context of an alleged failure to comply with a child support order. We stated:

"Whether a defendant has failed to pay court ordered support when he or she had the ability to do so and whether that defendant has, in bad faith, caused his or her own ... inability to comply, with the intent of frustrating the court order, are material, and indeed, necessary, considerations bearing on whether the defendant should be punished [for contempt]"

*Id.* at 528–529, 677 A.2d at 594. *See also, Dorsey, supra*, 356 Md. at 352, 739 A.2d at 56. *("mens rea* elements must be established by evidence, and cannot simply be 'assumed.' "). In *Dorsey*, we further expounded on the *mens rea* requirement discussed in *Lynch*, explaining:

"While ability to comply with a court order at the time of the alleged criminal contempt is not directly an element of the offense, evidence of an ability to comply, or evidence of a defendant's conduct purposefully rendering himself unable to comply, may, depending on the circumstances, give rise to a legitimate inference that the defendant acted with the requisite willfulness and knowledge. By contrast, evidence of an inability to comply during the relevant period may, again depending upon the circumstances, support an inference that the defendant lacked a contumacious intent. *See Lynch v. Lynch, supra*, 342 Md. at 528–529, 677 A.2d at 594."

In the case *sub judice*, viewing the evidence in the light most favorable to the State, we cannot agree that the trial court had sufficient evidence to find wilfulness. The record is simply devoid of any evidence that the appellant's failure to pay was deliberate or wilful. Without such evidence, the testimony that the appellant's payments were "sporadic at best" and that the appellant had not contacted the child

support agency, standing alone, is insufficient as a basis on which reasonably to infer the necessary *mens rea* for a criminal contempt conviction. *Compare, Furtado v. Furtado,* 380 Mass. 137, 402 N.E.2d 1024, 1031–32 (1980) (holding evidence of criminal contempt sufficient where State proved that the defendant had adequate income to make the payment, had knowledge of the order, and failed to make payments.).

The application of the *mens rea* requirement in *Dorsey* is instructive. There, it was undisputed that the two defendants, Dorsey and Craft, failed to comply with child support orders, yet, in both cases we held that there was insufficient evidence in the record to sustain their convictions. *See Dorsey,* 356 Md. at 353, 739 A.2d at 57. Dorsey's conviction was based on evidence which proved a lack of support payment for ten-months, the lack of employment information in the employment records, and the fact that agency's records had an incorrect address for Dorsey. *Id.* at 353, 739 A.2d at 57–58. We concluded, however, that these facts were "entirely insufficient to support an inference that Dorsey's failure to make support payments during the period was willful and done with contemptuous intent" *Id.* at 354–55, 739 A.2d at 58. Likewise, Craft was convicted of criminal contempt, on unsworn testimony where no documents were admitted into evidence, on the theory that he could have obtained a better job, and therefore paid the child support, despite the loss of his driving privileges. This Court, while noting that the State produced no "evidence" relating to Craft's employment opportunities, qualifications for employment, wages available to him, the distance between his residence and employment opportunities, or the availability of public transportation, stated:

"Assuming *arguendo* that the unsworn statements by defense counsel and the agency representative should be treated as evidence, nevertheless such 'evidence' was wholly insufficient to support an inference that Craft's failure to comply was accompanied by a contumacious intent."

356 Md. at 355, 739 A.2d at 58.

The same analysis applies in this case. Assuming *arguendo* that, without having the child support order in evidence, the

court may conclude that the appellant was a party to the child support order and had notice of the date and terms of the order, the State's evidence showed neither that the appellant had sufficient money to pay the child support order nor that he had the ability to earn sufficient money and wilfully failed to work and pay. In fact, the State's sole witness testified that she was not aware of the appellant's financial or personal situation since July 21, 1997, the time that the appellant made his last child support payment. Thus, in limiting its proof to lack of compliance with the order, the State has failed to offer sufficient evidence to prove the crime of constructive criminal contempt beyond a reasonable doubt.

*JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR CECIL COUNTY WITH INSTRUCTIONS TO ENTER A VERDICT OF NOT GUILTY. COSTS TO BE PAID BY CECIL COUNTY.*