*Robin Bartlett Frazier v. James McCarron, et al.,* **No. 4, September Term, 2019.**
**Opinion by Wilner, J.**

## HEADNOTE

In a complaint filed in the Circuit Court for Carroll County, petitioner sought sanctions against the Taneytown City Council for alleged violations of the Open Meetings Act (OMA) by reason of its holding a closed session to consult with the Mayor, City Manager, and City Attorney regarding threatened litigation by petitioner's husband. The Circuit Court found that the Council did violate some provisions of OMA but determined that those violations were technical, harmless, and not willful, and entered judgment for the defendant. The Court of Special Appeals, also finding that any violations were technical, harmless, and not willful, affirmed.

The Court of Appeals rejected the notion that violations of OMA could be excused because they were found to be technical or harmless. It held, however, that (1) all sanctions under the Act were discretionary with the trial court, and (2) the court could not impose civil penalties or void actions of the public body unless the violations were willful. The Court of Appeals defined willful as knowing and intentional, meaning deliberate and with knowledge that the conduct violates OMA; the conduct does not have to be nefarious or for a corrupt motive to be willful. The Court held that declining to impose the requested sanctions was not an abuse of the trial court's discretion, and therefore affirmed the judgment.

Circuit Court for Carroll County
Case No. 06-C-16-071811
Argued: October 2, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 4

September Term, 2019

_____

ROBIN BARTLETT FRAZIER

v.

JAMES MCCARRON, et al.

_____

Barbera, C.J.
McDonald
Watts
Hotten
Booth
Greene, Clayton, Jr. (Senior Judge,
Specially Assigned)
Wilner, Alan M. (Senior Judge,
Specially Assigned)

_____

Opinion by Wilner, J.

_____

Filed: November 20, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In a complaint filed in the Circuit Court for Carroll County, petitioner alleged that the Taneytown City Council held a meeting on June 22, 2016 that was closed to the public in violation of the State Open Meetings Act (Md. Code, Title 3 of the General Provisions Article (GP) (OMA)). In her amended complaint, petitioner asked the court to impose civil penalties in the amount of $8,250, void all actions taken at the meeting, require the Council to reimburse her for all legal expenses and court fees, direct the Council to unseal minutes of the meeting, and order the Council to post the court's Order on the first page of the City's website and retain it there for two years.

After a two-day hearing, the court concluded that the Council had, in fact, violated certain provisions of OMA but viewed those violations as "technical" in nature. The court found that the Council had not acted willfully and that the violations were harmless. It therefore entered judgment in favor of the Council.[1] In an unreported Opinion, the Court of Special Appeals, with one exception that it found harmless, rejected petitioner's assertions of error and affirmed the Circuit Court judgment. We granted *certiorari* to clarify certain aspects of OMA, in particular the meaning of "willfully" for purposes of

---

[1] The court announced its findings and decision from the bench. There is no separate document setting forth the judgment, as required by Md. Rule 2-601(a), only a docket entry stating, "Court granted judgment in favor of Defendant." The lack of a separate document can affect the appealability of a ruling. *See Taha v. Southern*, 367 Md. 564 (2002). In *URS Corp. v. Ft. Myer Construction*, 452 Md.48 68 (2017), however, the Court, confirming a holding in *Suburban Hospital v. Kirson*, 362 Md. 140, 156 (2000), concluded that the separate docket requirement can be waived when "the trial court intended the docket entries made by the court clerk to be a final judgment and where no party objected to the absence of a separate document after the appeal was noted." In light of the docket entry in this case and the fact that respondent made no objection to the lack of a separate document, we shall regard the absence of such a document in this case as having been waived.

that Act, and whether violations of the Act may be excused as technicalities or harmless error.

SUMMARY OF OMA

We shall need to consider certain provisions of OMA, in some detail, but, to bring context to the underlying facts, a summary of the relevant provisions in Subtitles 3 and 4 of the Act would be useful at this point. We start with two prefaces. First, there is no dispute or doubt that the City Council, being a public body as defined in OMA, is subject to that Act. Second, the legislative policy implemented by the Act, as expressed in GP § 3-102 (with some non-substantive punctuation modifications on our part), is that:

> "It is essential to the maintenance of a democratic society that, except in special and appropriate circumstances, public business be conducted openly and publicly, and the public be allowed to observe the performance of public officials and the deliberations and decisions that the making of public policy involves."

Subtitle 3 (§§ 3-301 through 3-306) contains the actual requirements of the Act. Section 3-301 requires generally that, except as otherwise provided in the Act, a public body shall meet in open session.[2] Section 3-302 requires a public body to give reasonable advance notice of its meetings, whether open or closed, and sets forth the manners in which notice may be given. Section 3-302.1(a) requires a public body, before meeting in open

---

[2] Although not relevant to this case, we note that the requirements of OMA do not apply when a public body is carrying out administrative, judicial, or quasi-judicial functions, as defined in § 3-101, or to chance encounters, social gatherings, or other occasions not intended to circumvent OMA (GP § 3-103), but that, if another law relating to meetings of public bodies conflicts with OMA and is more stringent, that law will prevail (GP § 3-105).

session, to make available to the public the known topics to be discussed and whether the public body expects any portion of the meeting to be closed. Subsection (b) provides that, if the public body is unable to comply with subsection (a) because the meeting was scheduled in response to an emergency or other unanticipated situation, it must, on request, make available an agenda of the meeting within a reasonable time after the meeting occurs.

Section 3-305, which is to be strictly construed in favor of open meetings, expressly permits a public body to meet in closed session for certain enumerated purposes, including "consult[ing] with counsel to obtain legal advice." Finally, § 3-306 requires a public body either to record its sessions electronically or have minutes of its sessions prepared and made subject to public inspection "as soon as practicable" after the meeting and, in § 3-306(c), specifies what must be included in the minutes.[3]

Subtitle 4, consisting of §§ 3-401 and 3-402, provides for the enforcement of OMA. Section 3-401(b) permits any person to file a petition in the Circuit Court that asks the court (1) to determine the applicability of the relevant provisions in Subtitle 3, (2) to require the public body to comply with those provisions, and (3) to void the action of the public body. Subsection (c) expresses a presumption that the public body did **not** violate OMA and places the burden of proving a violation on the petitioner.

---

[3] We have omitted mention of § 3-304, which deals with interpreters, because it has no relevance to this case.

3

Section 3-401(d) permits the court, among other things, to issue an injunction, declare the final action of the public body void if it finds "that the public body willfully failed to comply with §3-301, §3-302, § 3-303, or § 3-306(c) of this title and that no other remedy is adequate," and assess against any party reasonable counsel fees and other litigation expenses that the party who prevails in the action has incurred. Section 3-402 provides, in addition, for civil penalties against a public body that "willfully meets with knowledge that the meeting is being held in violation of this subtitle . . ."

FACTUAL BACKGROUND

What triggered this case was a proposed ordinance pending before the City Council that would enact a Code of Ethics for elected officials (Ordinance 22-2016). There also was a proposed charter amendment that provided for the removal of elected officials that was pending a review to determine whether a sufficient number of valid signatures had been collected to submit the proposal to referendum. Petitioner seemed to believe that that function would be performed by the members of the Council.

One of the then-Council members, Donald Frazier, who was petitioner's husband, vehemently objected to both proposals. On May 25, 2016, Daniel Cox, an attorney for Mr. Frazier, wrote to the City Attorney Jay Gullo, insisting that the signatures on the proposed charter amendment be counted at an open meeting, presumably of the Council. [4] On June

_____

[4] The signatures were, in fact, verified by employees of the City, not the Council, in a nonpublic session. A protestant complained to the Open Meetings Compliance Board,

4

16, 2016, Mr. Cox addressed a letter to Mayor James McCarron and the Council insisting that the proposed ordinance be withdrawn and serving notice that "all necessary and proper legal steps will be taken to protect the legal rights of Americans and my client." Mr. Frazier distributed a copy of that letter to each member of the Council. The implication taken by the Mayor and Council was that, if the Council enacted the ordinance, it or the City would be sued by Mr. Frazier.

On June 17, upon receipt of Mr. Cox's letter, Mayor McCarron sent an e-mail to the members of the Council and other selected City officials calling a "special executive session of the Mayor and Council" at 7:00 p.m. on June 22 in the Council Chambers at City Hall to discuss a legal matter with the City Attorney. On June 20, Mr. Gullo responded to the two letters from Mr. Cox, informing him that, pursuant to GP § 3-305(b)(7), the Council would be meeting in closed session at 7:00 p.m. on June 22 for the purpose of consulting with Mr. Gullo to obtain legal advice. Mr. Gullo advised Mr. Cox that it would be inappropriate for Mr. Frazier to attend the meeting and be party to discussions of legal matters concerning a claim he may make against the City. At Mr. Gullo's instruction, City Clerk Clara Kalman posted a notice of the closed meeting and its purpose on the City's public bulletin boards on June 20 and directed the City's information technology specialist to post it as well on the City's website. The notice did not mention any open meeting at which the question of going into closed session would be considered.

---

which issued an opinion concluding that the employees did not constitute a public body and thus were not subject to OMA. That does not appear to be an issue in this appeal.

5

Just before 7:00 p.m., two members of the public – Ms. Frazier and Katherine Adelaide – appeared at City Hall for the purpose of attending the meeting. Both were turned away by Lisa Harvey, an administrative assistant with the City, who informed them that the meeting was closed. Ms. Harvey later testified that she had no training in OMA. She worked for the City Manager and said that her duties as an administrative aide dealt predominantly with water and sewer billing. She happened to be at City Hall that evening working on a project with other co-workers. The project, coincidentally, was qualifying the signatures on the proposed Charter amendment.

Four of the five members of the Council participated in the closed meeting, one by telephone. Mr. Frazier was not present; apart from Mr. Gullo's suggestion that it would be inappropriate for him to attend, he happened to be in Africa at the time. Also present were Mayor McCarron, Henry Heine (the City Manager), and Mr. Gullo, the City Attorney.

In his testimony before the Circuit Court, Mayor McCarron noted that the Council usually meets twice a month, that it had met last on June 13, and that it was not scheduled to meet again until the first week in July. In light of what he and Mr. Gullo regarded as imminent threatened litigation, he felt it important to get legal advice prior to the July meeting. That is why he asked for the special meeting on June 22 which, because it was solely to get legal advice, could properly be closed under § 3-305(b)(7). He acknowledged that, in order to close a meeting, the Council would need to convene first in open session and adopt a motion to close the meeting and that the public was entitled under OMA to notice of the open meeting. The Mayor testified that there was a brief open meeting on the

6

22nd, immediately before the closed session, and that the only matter considered at that session was whether to close the meeting.

Mr. Gullo took notes at the closed session and eventually turned them over to the City Clerk to type up on a form recommended by the Attorney General for public bodies. He said that, because he went out of town following the meeting, he was unable to do that until July 5. The minutes ultimately prepared neglected to mention the presence of the Mayor, which Mr. Gullo said was an oversight. The minutes were reviewed by the Council at its August 3, 2011 meeting and became public at that time.

Petitioner's amended complaint alleged the following OMA violations:

(1)      § 3-301 by failing to hold an open meeting at which the public could observe the deliberations leading to the decision to go into closed session;

(2)      § 3-302 by failing to give advance notice of both the required open meeting and the closed session;

(3)      § 3-303 by denying the public the right to attend an open meeting at which the proposed closed session could be voted on;

(4)      § 3-305(d)(2)(i) by failing to hold a recorded vote conducted by a presiding officer at an open meeting before going into closed session;

(5)      § 3-305(d)(2)(ii) by the presiding officer's failure, prior to going into closed session, to make a written statement of the reason for closing the session and of the topics to be discussed;

7

(6)     § 3-305(d)(3) by failing to conduct an open session to make a written statement and take the vote before going into closed session;

(7)     § 3-306(c)(2) and § 3-104 by failing to have written minutes of the closed session available for consideration at the Council's next open meeting on July 6, 2011;

(8)     § 3-306(c)(2) and § 3-104 by failing on July 11 to have written minutes of the closed session for consideration at its next meeting on August 3, 2011; and

(9)     § 3-306(c)(2) and § 3-104 by failing on August 3, 2011 to produce any statement by the presiding officer of the reasons for closing the June 22 session and the topics discussed at that session.[5]

At the conclusion of petitioner's case, the Circuit Court, in *extemporaneous* remarks from the bench, announced its findings regarding the alleged violations. In summary, the court:

---

[5] Although not mentioned in her amended complaint, petitioner argued to the trial court and argues to us that the supposedly closed session was not a legitimate closed session because the City Manager, Mr. Heine, was present. In light of our ultimate conclusion, this argument may well be moot, but, as we are attempting in this Opinion to provide some clarification to OMA and as the point was presented to the trial court and to us and could arise again, we shall address it and summarily reject it.

The closed session was solely for the purpose of consulting with counsel. That was not in dispute. The Mayor and Council members obviously and reasonably believed that the City Manager, who would have a clear role to play in the event of any litigation, was a necessary participant in that conversation. A closed session is one that "is not open to *the public*," one that *the public* is not allowed to observe (emphasis added). GP §§ 3-104, 3-102. The presence of an individual who is not a member of the public body but is reasonably believed to be necessary or helpful to the purpose for which a closed session is permissible under OMA does not convert a proper closed session into an unlawful one. Indeed, most, if not all, of the permissible purposes listed in GP § 3-305 for a closed session contemplate that consultants, staff persons, or others may be present.

8

(1)     credited the Mayor's testimony, which the court believed was corroborated by the councilmembers and Mr. Heine that there was, in fact, an open meeting prior to the closed session at which the Mayor, as the presiding officer, took a vote to go into closed session and, accordingly, found no violation of § 3-301;

(2)     found that the public was not told that there would be an open meeting that they could attend and observe the discussion regarding the decision to close the session and that § 3-302 therefore was violated;

(3)     found that there was no evidence of a written statement of the reason for closing the meeting, a citation of authority for closing the session, or a listing of the topics to be discussed, that § 3-305(d)(2) therefore was violated, but that the violations were "technical" ones;

(4)     found that minutes of the open meeting and the closed session had not been prepared timely and failed to reflect the presence of the Mayor, which also was a "technical" violation of § 3-306; and

(5)     rejected the other claimed violations, including the claim that the June 22 meeting was not a lawful closed meeting under § 3-305(b)(7) because the City Manager was present and his presence was not disclosed in the posted notice.

The court's dispositive conclusion was that none of the violations were willful. In that regard, the court rejected a broad definition of "willful" but, without presenting any alternative definition or standard, treated the violations as "technical" in nature and indicated mere negligence rather than anything "nefarious." On that basis, it granted judgment for respondent.

9

The Court of Special Appeals disagreed with the trial court's conclusion that there had, in fact, been an open meeting at which a quorum of the Council voted to close the session. It found that error to be harmless, however, and, rejecting petitioner's other contentions, affirmed the judgment.

## DISCUSSION

This action was filed pursuant to GP § 3-401. That section, coupled with § 3-402, provides four types of relief with respect to alleged OMA violations – declaratory, injunctive, remedial, and punitive. The court may:

(1)     determine the applicability of those provisions of OMA that are at issue (declaratory);

(2)     require a public body to comply with those provisions, as interpreted by the court (injunctive);

(3)     declare final actions of the public body void if it finds that the public body willfully failed to comply with §3-301, § 3-302, § 3-303, or § 3-306(c) and assess reasonable counsel fees and litigations costs in favor of a prevailing party (remedial); and

(4)     impose civil penalties upon the public body if it finds that the public body "willfully [met] with knowledge that the meeting [was] being held in violation of this subtitle," presumably meaning subtitle 4 of title 3 (punitive). [6]

---

[6] It is not clear who is entitled to receive the proceeds of a civil penalty. Section 3-402 is silent as to that matter. Section 3-402(a) regards the exaction as a "civil penalty." Section

Our review is of the Circuit Court's judgment. To the extent that it embodies conclusions or expositions of law, our review is *de novo*; we may freely substitute our conclusions for those of the trial court. We do give deference to the trial court's findings of fact that are supported by substantial evidence and thus are not clearly erroneous. *Romero v. Perez*, 463 Md. 182, 196 (2019).

**Factual Issue: Was There an Open Meeting?**

The only clear allegation of factual error arises from the trial court's finding that the Council actually held an open meeting on June 22, at which the Council voted to adjourn into closed session. As noted, the Court of Special Appeals concluded that that finding was clearly erroneous, and we agree with that conclusion.

It is true that the Mayor testified that there was an open meeting at which a vote was taken to go into closed session, and ordinarily the testimony of one witness, if believed by the trial court, will suffice to support a factual finding, even if inconsistent with other testimony or evidence. The problem here, as the Court of Special Appeals pointed out, is that the trial court used as the basis for its finding not just the Mayor's testimony but the court's belief that "**[a]ll of the witness[es]** testified, yeah, we went into open session and we voted to go into closed session" (emphasis added), and the record demonstrates, on its

---

(b) refers to it as a "fine." We note Md. Code, Courts Article, Title 7, Subtitle 5, which deals with the collection and disposition of fines but is limited to "monetary penalties prescribed by a statute or ordinance **for a crime**" (emphasis added). There is also Md. Code, Local Government Article, § 6-113, but that is limited to fines, penalties, and forfeitures collected by the District Court for a municipal infraction. In light of our ultimate conclusion in this case, we need not resolve the issue in this Opinion.

11

face, that that was not the case. Councilmembers Foster, Wantz, and Zambetti and City Manager Heine all testified that there was no open meeting on June 22. The court's finding to the contrary, therefore, was not supported by substantial evidence.

**Legal Issues – Willfulness; Technical Violations; Harmless Error**

The legal issues presented emanate from Subtitles 3 and 4 of OMA. Subtitle 3 states the "thou shalts" and the "thou shalt nots." They are not mere guidelines for public bodies. They are couched in mandatory language and, indeed, would hardly implement the legislative policy expressed in § 3-102 if not so expressed. A public body "shall" meet in open session unless otherwise **expressly** provided (§ 3-301); before meeting, the public body "shall" give reasonable advance notice and "shall" make its agenda available to the public (§§ 3-302, 3-302.1); the general public "is entitled" to attend an open session (§ 3-303); exceptions under § 3-305 are "strictly construed in favor of open meetings" and may not take place unless a majority of the members vote in favor of doing so at an open meeting.

Violations of those mandates are not "technical" in nature; nor are they ever harmless. A violation may not cause specific demonstrable injury to individual members of the public, but it does necessarily clash with and detract from the public policy that the Legislature declared in § 3-102 is "essential to the maintenance of a democratic society," that "ensures the accountability of government to the citizens of the State," and that "enhances the effectiveness of the public in fulfilling its role in a democratic society." Conduct that has that demeaning effect can be contagious and cannot be considered

12

harmless. It strikes at the core of our democracy – the right and power of the citizens to control their government – even if its harm is not immediately perceptible.

That does not mean that an axe must fall upon every, or any particular, violation. The Legislature wisely provided a range of remedial and punitive options in §§ 3-401 and 3-402, established conditions on imposing the more serious of them, and, subject to those conditions, left the choice largely to the discretion of the court. It is within that discretionary framework that the sanction, if any, can be made to fit the offense, and that framework goes beyond the remedies set forth in those sections. Section 3-401(a)(3) expressly provides that the section does not affect or prevent the use of "any other available remedies."

Most of the debate in this appeal centers on the meaning of "willful" or "willfully." In that regard, it first is important to note that, of the various remedies listed in §§ 3-401 and 3-402, only two are conditioned on the violation being willful – voiding final actions by the public body and the imposition of civil penalties. The authority to void final actions is subject to the further condition that no other remedy is adequate. Issuance of an injunction, the assessment of counsel fees and litigation costs, the posting of a bond, and the granting of other appropriate relief do not require a finding of willfulness. *Armstrong v. Baltimore*, 409 Md. 648, 694 (2009); *Wesley Chapel v. Baltimore*, 347 Md. 125, 129 (1997).

It also is significant to note that it was never clear just what action(s) petitioner wanted the court to declare void. The amended complaint simply asked the court to void

13

"any and all actions taken or made by Defendants at its closed meeting on June 22, 2016." There was no evidence or allegation that anything even was discussed, much less decided, in the closed session other than consultation with the City Attorney regarding how to respond to the threatened lawsuit by petitioner's husband. The ordinance he opposed was not voted on; the signatures on the charter amendment he opposed were not before the Council and no action was taken by the Council with respect to them. Even if the decision to meet in closed session was knowingly wrong and willful, we are unable to determine from this record what the court could have declared void.

There is a live issue, however, with respect to the refusal of the court to impose civil penalties (fines) under § 3-402, and it is in that context that we need to clarify the meaning of "willfully meets with knowledge that the meeting is being held in violation of this subtitle." This Court has attempted to define what "willful" or "willfully" means on several occasions. The most comprehensive attempt was in *Deibler v. State*, 365 Md. 185, 192-95 (2001), which involved use of the word in the State wiretap law. We noted there that, at the time, the word "willful," in one form or another, appeared 547 times in the Maryland Constitution, Code, and Rules, in a variety of contexts. We observed as well that the United States Supreme Court had declared the word to be a "word of many meanings" and that its construction was often influenced by its context. *Id.* at 192, quoting from *Ratzlaf v. United States*, 510 U.S. 135, 141 (1994).

From a survey of our prior cases, we observed that most, though not all, of the interpretations required "only that the act be committed intentionally, rather than through

14

inadvertence." *Deibler*, 365 Md. at 195. Our ultimate conclusion was that, when construing the word as a statutory term, "we need to give it the contextual meaning most probably intended by the Legislature, and, if the term is not susceptible to a single common meaning, we must look at relevant legislative history in an attempt to discern that intent." *Id.*

This Court has looked at the history of OMA. *See C.L.U.B. v. Board of Elections*, 377 Md. 183 (2003); *Wesley Chapel v. Baltimore, supra*, 347 Md. 125. Although open meeting requirements were scattered in the Code earlier, the first comprehensive State law was enacted in 1977 as part of Article 76A of the 1957 Code.[7] That law contained a provision similar to §3-402 permitting a court to declare actions taken at a closed session held in willful violation of the Act to be void, but there was no provision for civil penalties in that law.[8] A 1991 rewriting added a civil penalty. Section 10-511 of the State

---

[7] *See* 1977 Md. Laws, Ch. 863 (Senate Bill 493). The other part of Art. 76A dealt with open meeting requirements in St. Mary's County. A comprehensive open meetings bill had been passed in 1976 but was vetoed by the Governor, not because of any opposition on his part to open meeting requirements but because of concern over certain provisions in the bill. *See* Veto Message (1976 Md. Laws at 2747). In May 1976 – a month after the close of the 1976 Session – the Governor, by Executive Order No. 01.01.1976.02, imposed open meeting requirements similar to what was in the 1976 bill on State Executive Branch agencies. In October 1976, in response to suggestions he had received, he made clarifying changes to that Order. *See* Executive Order 01.01.1976.09. The Governor worked with legislative leaders and others prior to the next session and, through the Senate President, co-sponsored the 1977 bill (SB 493), which addressed some of the concerns stated in the 1976 Veto Message.

[8] There was a provision in the bill as introduced that, if a member of a public body had previously been found by a court to have knowingly and willfully participated in a violation of certain provisions of the Act, that member shall be subject to removal from office for civil misconduct. That provision was deleted during the legislative process.

15

Government Article subjected any member of a public body who willfully participated in a meeting with knowledge that the meeting was being held in violation of the Act to a civil penalty not to exceed $100.[9] The current provision was enacted in 2013 (see 2013 Md. Laws, Ch. 612) and the entire Chapter was transferred to the new General Provisions Article in 2014.

Willfullness of a violation, as a condition to voiding actions of a public body or imposing civil penalties of one kind or another, and for other purposes as well, was first before the Legislature in 1976 and again in 1977. The subsequent amendments merely carried forward that terminology. The question of legislative intent really focuses on the 1977 enactment, the legislative history of which is extensive. The legislative file on SB 493 consumes 367 pages. It reveals, mostly through the various drafts and amendments, that willfulness was very much on the legislators' minds with respect to remedies for violations. The term appeared, disappeared, and reappeared in various drafts prepared during the legislative process. Nowhere, however, is there any indication of what the legislators meant by the term. They were familiar with it, and they used it. In the absence of any direct indication, it falls to us to determine from the general rules of statutory construction what they probably intended.

The lynchpin always is reasonableness. The legislative history does clearly indicate an awareness by the General Assembly that there needed to be some balance in these

---

[9] By then, as part of the ongoing Code Revision effort, Article 76A had been transferred to the new State Government Article.

16

provisions. They took the requirements in Subtitle 3 seriously; they meant for those requirements to be obeyed. They also understood, however, that allowing a judge to void legislative or quasi-legislative acts that otherwise were valid in all respects or to impose monetary sanctions either on members of a public body or on the body itself could have truly harmful effects on the public good and on the willingness of citizens to serve on public bodies. As noted in the Governor's 1976 Veto Message, there was concern about the impact of a later declaration voiding actions of a public body on decisions and actions taken by members of the public prior to that declaration in reliance on the public body's actions.

Harking back to what we said in *Deibler*, we think that willfulness, for OMA purposes, means a violation that is knowing and intentional. By "intentional," we mean deliberate – other than inadvertent – and by "knowing" we mean knowledge that the act or omission violates a mandatory provision of OMA. That is consistent with the statutory language applicable to civil penalties and not inconsistent with a reasonable contextual meaning of "willful" in § 3-401(d)(4) applicable to the voiding of public body actions. This standard does not require that the violation be for any nefarious or corrupt purpose.

In these regards, we note the provisions of GP §§ 3-213 and 3-101(d-1), requiring that every non-judicial public body designate at least one individual to receive training on the OMA requirements, prohibiting the public body from holding closed sessions until that has been done, and requiring either that that trained individual be present at each open meeting of the public body or that the public body complete a checklist developed by the Office of the Attorney General and include that checklist in the minutes of the meeting.

17

Compliance with those provisions should limit both inadvertent or negligent violations and, with knowledge of the possible consequences of a violation, knowing and intentional ones as well.

## Conclusion

We have rejected the use of "technicality" and harmless error as reasons, in effect, to excuse violations of OMA. They are not necessary for that purpose. With the conditions noted, all of the remedies and sanctions provided for in §§ 3-401 and 3-402 are discretionary with the court. It is a broad discretion, to be used wisely, and, when so used, provides the proper balance intended by the Legislature.

As we observed, petitioner asked the court to impose civil penalties, declare actions void, reimburse her for attorneys' fees and litigation costs, direct the Council to unseal the minutes of the closed session, and post its order on the City's website. It seems clear to us that, although using the wrong terms, the trial court did not believe that imposing civil penalties on the Council was appropriate under the circumstances. We shall treat that as an exercise of discretion not to impose that sanction, and we find no abuse of it. With respect to petitioner's other requests, there was nothing for the court to void, petitioner presented no evidence of attorneys' fees or litigation costs, so there was no basis for any monetary award, and it appears that the minutes of the closed session were made public a month-and-a-half later. For these reasons, we shall affirm the judgment of the Court of Special Appeals affirming the judgment of the Circuit Court.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**