Circuit Court for Frederick County
Case No. 10K15057318

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2139

September Term, 2016

---

DANYELLE WALKER

v.

STATE OF MARYLAND

---

Eyler, Deborah S.,
Wright,
Zarnoch, Robert A.
    (Senior Judge, Specially Assigned),

JJ.

---

Opinion by Zarnoch, J.

---

Filed:  September 27, 2017

Danyelle Walker, appellant, was charged with two counts of criminal contempt and four counts of failure to pay child support. Following a jury trial in the Circuit Court for Frederick County, appellant was found guilty of all charges. The court sentenced appellant to three years of imprisonment, with all but twelve months suspended. Appellant appealed, and now presents two questions for our review:

1. Was the evidence legally insufficient to sustain the convictions for criminal contempt and failure to provide child support?

2. Did the circuit court err in ordering separate sentences for criminal contempt and failure to provide child support?

For the following reasons, we conclude that there was sufficient evidence of willful nonpayment to sustain the convictions for criminal contempt and failure to provide child support, and that the court did not err by ordering separate sentences. Accordingly, we affirm the judgments of the circuit court.

## BACKGROUND

Appellant was charged with two counts of criminal contempt and four counts of failure to provide child support in violation of Md. Code (1984, 2012 Repl. Vol.), Family Law Article ("FL"), § 10-203. Count One charged him with constructive criminal contempt from March 2013 through March 2015. Count Two charged him with constructive criminal contempt since April 2015. Counts Three through Six charged him with failure to provide child support for each of his four minor children. On December 7, 2016, a jury trial was held in the Circuit Court for Frederick County. The following testimony was elicited at trial.

Paula Coleman testified as one of the State's witnesses. Coleman is a teacher in Frederick County and has four daughters with appellant. At the time of the trial, all four daughters were minors. Coleman testified that appellant did not work regularly between 1996 and 2006. According to Coleman, appellant lived with his mother. On August 4, 2006, appellant entered into a consent order to pay $500 per month in child support for the four children. From 2006 through 2015, Coleman stated that she spoke to appellant about three times a year. Coleman testified that she did not receive any child support payments directly from appellant between April 2013 and October 2015. During that period, she would occasionally talk to appellant and ask for support, but never received it, despite appellant making promises to provide support. In 2015, the child support order was increased to $700 per month. At the time that the order was changed, appellant's salary was listed as $17.33 per hour. Coleman did not know if appellant was actually working at that time.

The jury also heard testimony from Edward Buell, a Department of Social Services ("DSS") employee who handled the case. Buell described the various measures taken by DSS when a parent fails to make their required child support payments. DSS attempts to make contact with the parent, then sends a demand letter, then initiates bank garnishment, and then directs suspension of the parent's driver's license. Buell explained that the State also files for civil contempt prior to charging the non-paying parent with criminal contempt. Buell testified that these efforts were taken in this case with appellant, but that he still repeatedly failed to pay child support from May 2013 through October 2015. Buell further testified that for at least seven of those months, appellant

2

earned income but made no child support payments. On cross-examination, Buell testified about various payments and non-payments made by appellant during the relevant time frame. In the first quarter of 2014, appellant made $172 and paid $670 in child support. In the second quarter of 2014, appellant made $2,991 and paid no child support. In the third quarter of 2014, appellant made $4,588 and paid $730.77 in child support. In the fourth quarter of 2014, appellant made $1,434 and paid $1,477 in child support. In the first quarter of 2015, appellant made $2,347 and paid $1,611 in child support. Buell admitted that appellant never indicated to him that he did not intend to pay the child support.

Appellant also testified in his defense. He told the jury that he has lived with his mother his entire life. From 2014 through 2015, appellant worked for Ruppert Landscaping for about a year and a half. He testified that child support was taken out of his check when he worked for Ruppert Landscaping. Appellant also did construction work for Eagle Contracting for a period of time. When he worked for Eagle Contracting, he paid child support on his own, because he did not make enough money to have his wages garnished. He claimed that he always looked for work during the 32-month period that the State claimed he had ignored the child support order. He stated that he looked for a job about two or three times a month. Appellant received unemployment when he was not working, and claimed that some of that money went to child support. Appellant admitted that he paid no child support from May through October 2013 and from June through October 2015. He told the court that he was not working during those periods.

Appellant testified that he did not intentionally fail to pay child support. At the time of the trial, appellant was over $68,000 in arrears.

At the conclusion of the trial, appellant was convicted of two counts of criminal contempt and four counts of failure to provide child support. The court sentenced appellant to three years of imprisonment, with all but twelve months suspended for each count. The sentences were to run concurrent to each other. This appeal followed.

## DISCUSSION

### I. Sufficiency of the Evidence

An appellate court "reviews a question regarding the sufficiency of the evidence in a jury trial by asking whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Grimm v. State*, 447 Md. 482, 494-95 (2016) (Citation and internal quotation marks omitted). "We conduct such a review, however, keeping in mind our role of reviewing not only the evidence in a light most favorable to the State, but also all reasonable inferences deducible from the evidence in a light most favorable to the State." *Smith v. State*, 415 Md. 174, 185-86 (2010). "We give 'due regard to the fact finder's findings of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses.'" *State v. Suddith*, 379 Md. 425, 430 (2004) (quoting *Moye v. State,* 369 Md. 2, 12 (2002)).

Criminal contempt has been defined by the Court of Appeals as follows:

> Criminal contempts may be direct or constructive. A "direct" criminal contempt has been defined as conduct which occurs in the presence of the court or so near the court that it

4

interferes with the proper function and authority of the court. An "indirect" or "constructive" criminal contempt is any contempt other than a direct contempt. Whether direct or constructive, only that conduct that is willful or intentional may constitute a criminal contempt.

*Ashford v. State*, 358 Md. 552, 563 (2000) (Citations omitted).

The Court remarked in *Dodson v. Dodson*, 380 Md. 438, 452 (2004), that "constructive criminal contempt [ ] is the appropriate means to punish a past willful violation of a court order." Appellant was convicted of two counts of constructive criminal contempt. "[I]n order to convict an accused of constructive criminal contempt, [the State] has the burden of proving, beyond a reasonable doubt, 'a deliberate effort or a willful act of commission or omission by the alleged contemnor committed with the knowledge that it would frustrate the order of the court.'" *Dorsey v. State*, 356 Md. 324, 352 (1999) (quoting *In re Ann M.*, 309 Md. 564, 569 (1987)). "These *mens rea* elements must be established by evidence, and cannot simply be 'assumed.' Nevertheless, like scienter generally in criminal cases, they 'may be proven by circumstantial evidence and by inferences drawn therefrom.'" *Id.* at 352 (quoting *Dawkins v. State*, 313 Md. 638 (1988)).

Appellant contends that the evidence was insufficient because the State failed to show that he willfully or deliberately failed to comply with the child support orders. Appellant argues that all the State showed was that appellant failed to make all monthly child support payments during the periods in question. The State counters that it gave the jury ample evidence to infer willfulness on appellant's part to sustain the convictions.

5

Both appellant and the State rely primarily on the cases of *Dorsey* and *Ashford*. In both cases, the appellate court held that the evidence was insufficient for a criminal contempt conviction. Appellant argues that this case is analogous to both of those cases, thus, requiring a reversal of his conviction. The State contends that the instant case is distinguishable because the State did provide evidence of willfulness on appellant's part.

*Dorsey* involved consolidated cases of two defendants, Dorsey and Craft, who had been convicted of criminal contempt because of their failure to pay child support. 356 Md. at 354. In Dorsey's case, he was convicted "based on the lack of support payments for [a] ten-month period, the lack of employment information in the agency's records, and the fact that the agency's records reflected an incorrect address for Dorsey." *Id.* The Court of Appeals held that those facts were "entirely insufficient to support an inference that Dorsey's failure to make support payments during the period was willful and done with a contumacious intent." *Id.* The Court highlighted the lack of evidence of Dorsey's ability to pay, stating that "[t]he only evidence relating to the period was Dorsey's testimony that he worked 'a couple of weeks at Wendy's,' that the pay was 'not that much,' and that, during the remainder of the period . . . he was either incarcerated or, when not incarcerated, he was unable to find work and 'basically' did 'nothing.'" *Id.* at 354-55. On the issue of a defendant's ability to comply, the Court provided that:

> [E]vidence of an ability to comply, or evidence of a defendant's conduct purposefully rendering himself unable to comply, may, depending on the circumstances, give rise to a legitimate inference that the defendant acted with the requisite willfulness and knowledge. By contrast, evidence of an inability to comply during the relevant period may, again depending upon the circumstances,

support an inference that the defendant lacked a contumacious intent.

*Id.* at 352. In Craft's case, the circuit court noted that the defendant did not have the ability to pay, but found him guilty on the theory that he could have obtained a better job at a fast food restaurant. *Id.* at 355. However, as the Court of Appeals noted, "[t]here was no 'evidence' relating to the employment opportunities at the fast food places, Craft's qualifications for a job at these establishments, the wages available at such places, the distance between Craft's residence and the fast food places, or the availability of public transportation." *Id.* Accordingly, the Court held that this evidence was insufficient "to support an inference that Craft's failure to comply was accompanied by a contumacious intent." *Id.*

In *Ashford*, the State failed to offer sufficient evidence to support a conviction for failure to pay child support because the evidence only showed a lack of compliance. 358 Md. at 574. The Court held that:

> [T]he State's evidence showed neither that the appellant had sufficient money to pay the child support order nor that he had the ability to earn sufficient money and willfully failed to work and pay. In fact, the State's sole witness testified that she was not aware of the appellant's financial or personal situation since July 21, 1997, the time that the appellant made his last child support payment. Thus, in limiting its proof to lack of compliance with the order, the State has failed to offer sufficient evidence to prove the crime of constructive criminal contempt beyond a reasonable doubt.

*Id.*

Appellant contends that like the defendants in these cases, he was convicted only on evidence of non-compliance. Like Craft, appellant argues that the State did not

7

present evidence on his qualifications for available jobs. Appellant points out that he testified at trial that he was always looking for work. Appellant asserts that "the State's evidence showed neither that appellant had sufficient money to meet his obligations nor that he had the ability to earn sufficient money and that he willfully failed to work and pay."

The State contends that there was enough evidence of willfulness and points to four features of this case for support: 1) appellant earned income from a landscaping company during some months where he did not pay child support; 2) appellant made only lukewarm efforts to find a job; 3) Coleman testified that appellant made repeated promises to pay over the phone but failed to do so; and 4) Buell's testimony that DSS made increasingly vigorous efforts to collect child support. We agree that the evidence presented in the instant case was sufficient to distinguish it from *Dorsey* and *Ashford*.

Although establishing an affirmative intent to not do something is a difficult task, there was enough evidence for the jury to infer willfulness on appellant's part. As the State points out, appellant signed two consent orders acknowledging the existence and magnitude of his obligation. Nevertheless, despite being fully aware of his obligation, he repeatedly failed to make the required payments and allowed the amount he owed to increase up to $68,000. Furthermore, unlike the cases discussed above, there was evidence regarding appellant's financials during some of the relevant periods. Testimony at trial established that appellant worked for a landscaping company and earned income during at least seven of the months that he did not pay child support. In contrast with *Dorsey* and *Ashford*, we know that appellant was earning income at certain points and

still not paying child support. Meanwhile, appellant was living with his mother and paying her rent. During periods of unemployment, appellant claimed that he was always looking for work, but when questioned about it he said he looked for jobs only two or three times a month. Looking for a job only two or three times a month is not equivalent to always looking for work. For someone who owes such a substantial amount in child support, that is not an adequate effort at obtaining employment. Moreover, Coleman's testimony about her communications with appellant also show a pattern of deliberate non-payment. Coleman testified that she would tell appellant over the phone that he needed to make his child support payments, and that he also promised her that he would. Nevertheless, he repeatedly failed to honor these promises to pay. As the State argues, appellant's "regular awareness that he was supposed to do so, his guarantees that he would do so, and his consistent and repeated failure to do so, permitted an inference that he knowingly and intentionally did not do so." Taken all together, appellant's knowledge of his obligations, promises to pay, employment history, and repeated failure to pay supports the jury's conclusion that appellant willfully failed to pay his required child support.

## II. Merger

The trial court sentenced appellant to three years of incarceration with all but twelve months suspended on Count One for criminal contempt. Appellant received the same sentence for his second criminal contempt conviction and for all four of his failure to provide child support convictions. Appellant's sentences on Counts Two through Six

9

were to run concurrently with his sentence for Count One. At no time during appellant's sentencing did counsel object to the sentence or request a merger.

On appeal, appellant argues that his convictions for failure to provide child support should have merged with each other as well as with his convictions for criminal contempt. Merger of sentences can be done under the required evidence test, the rule of lenity, or principles of fundamental fairness. *Potts v. State*, 231 Md. App. 398, 413 (2016). Appellant contends that his sentences should have been merged under either the rule of lenity or the principles of fundamental fairness.

The rule of lenity is as follows:

> Two crimes created by legislative enactment may not be punished separately if the legislature intended the offenses to be punished by one sentence. It is when we are uncertain whether the legislature intended one or more than one sentence that we make use of an aid to statutory interpretation known as the "rule of lenity." Under that rule, if we are unsure of the legislative intent in punishing offenses as a single merged crime or as distinct offenses, we, in effect, give the defendant the benefit of the doubt and hold that the crimes do merge.

*Monoker v. State*, 321 Md. 214, 222 (1990). "The rule of lenity is neither absolute nor exclusive, nor are there any fixed criteria for applying it. One fact is, however, undeniably clear. The rule of lenity, formulated as an aid to statutory construction, applies to *statutory* offenses." *Id.* at 223.

Criminal contempt is a common law offense; however, failure to provide child support is a statutory offense under FL § 10-203. "[T]he rule of lenity applies . . . where one offense is statutory and the other is a derivative of common law." *Khalifa v. State*, 382 Md. 400, 434 (2004). Appellant contends that under the plain language of the

10

statute, "nothing indicates that the General Assembly intended to authorize separate sentences for criminal contempt and failing to provide child support, where both are based on the same act or acts." However, as the State points out, the two crimes serve different purposes. The purpose of the child support statute is "to assist spouses and children in directly procuring support and thereby preventing them from becoming public burdens, to punish the offense of failing to provide support, and, by the fear of punishment, to prevent the commission of such an offense." *State v. Berry*, 287 Md. 491, 497 (1980). Criminal contempt is a common law offense "inherent in all courts as a principal tool to protect the orderly administration of justice and the dignity of that branch of government that adjudicates the rights and interests of the people." *Smith v. State*, 382 Md. 329, 337 (2004). Therefore, the court did not err in imposing sentences for both crimes. Accordingly, we decline to merge the convictions under the rule of lenity.

Appellant also argues that his convictions should have merged under principles of fundamental fairness. However, "[a]lthough a defendant may attack an illegal sentence by way of direct appeal, the fundamental fairness test does not enjoy the same procedural dispensation of Md. Rule 4-345(a) that permits correction of an illegal sentence without a contemporaneous objection." *Potts*, 231 Md. App. at 414. Appellant did not make a contemporaneous objection as to the lack of fundamental fairness of his sentences. Accordingly, this issue was not preserved for our review.

**JUDGMENTS OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**